**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BANCROFT MORSE, et al., | No. C 10-00628 SI |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT RE: JOHN BAHR** |
| v. | |
| SERVICEMASTER GLOBAL HOLDINGS INC., et al., | |
| Defendants. | |

On March 18, 2011, the Court heard argument on defendants' motion for partial summary judgment on the claims of plaintiff John Bahr. Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES defendants' motion.

**BACKGROUND**

This case is related to *Pablo v. ServiceMaster Global Holdings, Inc.*, case no. 08-3894, a putative class action pending before this Court. On August 17, 2009, the Court denied plaintiffs' motion to certify a class action in *Pablo*. *See* Case No. 08-3894, Doc. 49. The specific allegations in *Pablo* are discussed in more detail in the August 2009 Order. Since August 2009, dozens of individuals who would be class members in *Pablo* have filed suit independently, in eight cases that have been related by the Court, setting forth similar or identical claims.

Twenty three individuals, including plaintiff John Bahr, filed this related action on February 12, 2010. *See* Compl. (Doc. 1). As in *Pablo*, they bring claims against defendants ServiceMaster Global Holdings, Inc., the ServiceMaster Company, the Terminix International Company, L.P., and Terminix

1 International, Inc. (collectively "Terminix"). They allege six claims for violations of the California 2 Labor Code and Wage Orders: (1) failure to pay overtime (§§ 510, 1194, 1197), (2) failure to pay full 3 wages when due (§§ 220, et seq., 1194, 1198, 1199), (3) failure to keep proper records (§§ 226, 1174, 4 1174.5, Wage Order No. 4), (4) failure to provide meal and rest breaks (§§ 512, 226.7), (5) failure to 5 indemnify for necessary expenditures (§ 2802); and (6) failure to pay minimum wage (§ 1197). 6 Plaintiffs also allege that these violations constitute unfair business practices under California's Unfair 7 Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et. seq.

8 In their failure to indemnify claim, plaintiffs allege that they were not reimbursed for all out of 9 pocket expenses, such as the cost of operating their vehicles and of tools and protective gear. Compl. 10 ¶ 100. They allege that the expenditures were made at the direction of Terminix, were necessary, and 11 were made in direct consequence of the discharge of their duties. *Id.* They argue that defendants should 12 have reimbursed them for their expenditures, and that they are now entitled not only to reimbursement, 13 but also interest, and costs expended to obtain the reimbursements, including attorney's fees. *Id.* ¶ 101 14 (citing Cal. Labor Code § 2802).

## LEGAL STANDARD

17 Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and 18 any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled 19 to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of 20 demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 21 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving 22 party will have the burden of proof at trial. The moving party need only demonstrate to the Court that 23 there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

24 Once the moving party has met its burden, the burden shifts to the non-moving party to "set 25 out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). 26 To carry this burden, the non-moving party must "do more than simply show that there is some 27 metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 28 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there

must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56©).

**DISCUSSION**

Defendants move for partial summary judgment on the reimbursement claims of plaintiff John Bahr. Defendants argue that plaintiff Bahr was in fact adequately reimbursed for mileage, and that there are no facts on the record that would support his claim for reimbursement of other business-related expenses.

**1.     Mileage reimbursement**

The parties agree about the facts as they relate to plaintiff Bahr's mileage reimbursement claim. Terminix paid plaintiff Bahr "vehicle reimbursement" at a rate of "2% of his monthly gross sales, or $200, whichever was greater." Decl. of Sharee O'Toole in Support of Def. Mot. for Partial Summ. J. (Bahr) (Doc. 37) ("O'Toole Decl.") ¶ 16.[1] Terminix also had plaintiff Bahr report his miles actually driven. *Id.* at ¶ 17; Decl. of Jackie Wilson in Support of Def. Mot. for Partial Summ. J. (Bahr) (Doc. 38) ("Wilson Decl."), Ex. A. Terminix labeled the vehicle reimbursement either as "Nontax Gas" or

---

[1] Both parties cite to the same "Sales Compensation Plan" as containing this vehicle reimbursement term. Both parties have appended the same incomplete copy of the Plan, which includes terms 1–3(k) on the first page, and then begins just before term 6 on the second page. *See* O'Toole Decl. Ex. C; Decl. of Nancy Hersh in Supp. of Pl. Oppo. to Def. Mot. for Partial Summ. J. (Doc. 53), Ex. B. Because the parties agree what the reimbursement rate was, the Court accepts that as an undisputed fact. If the Plan contains additional terms regarding the calculation of the reimbursement, or when and how it is to be paid, that information is not on the record and is not considered by the Court on this motion.

3

"Gas All" (gas allowance) on plaintiff Bahr's earning statements. Wilson Decl. Ex. B. The words "Nontax Gas" would always appear, referring to the amount of the reimbursement "supported by Plaintiff's claimed mileage, at the then-applicable IRS mileage reimbursement rate." *Id.* ¶ 4. Where "Gas All" appeared, it referred to "the excess" reimbursement, "from which taxes are withheld." *Id.*

Over the claim period, from June 2004 through August 2008, plaintiff Bahr drove 58,013 miles. Mileage Reimbursement Table, Decl. of Nancy Hersh in Supp. of Pl. Oppo. to Def. Mot. for Partial Summ. J. (Doc. 53) ("Hersh Decl."), Ex. D (containing duplicate of table embedded in Def. Mot. for Partial Summ. J. (Doc. 35)). He was paid $42,834.79 for vehicle reimbursement. *Id.* If plaintiff Bahr had been paid at the IRS reimbursement rate for all of his reported miles, he would have received $16,553 less than he was paid. *Id.* However, there were 12 months where the vehicle reimbursement for that month was less than what plaintiff Bahr was entitled to: October 2006, January 2007, February 2007, September 2007 through April 2008, and June 2008. *Id.* Overall, plaintiff Bahr was underpaid $1,800.87 for those twelve months. *Id.*

Terminix argues that it is entitled to summary judgment because, overall, it has overpaid plaintiff Bahr. Plaintiff Bahr argues that an employer must reimburse an employee every month, and that Terminix should not be permitted to credit overpayments in earlier months to later months where plaintiff Bahr was not adequately reimbursed. Therefore, Terminix has underpaid plaintiff Bahr by $1,800.87, and Terminix is not entitled to summary judgment on the claim. Plaintiff Bahr argues that reimbursements must be paid on time, and that Terminix is attempting to "cook the books" to get around twelve months of underpayment.

California Labor Code Section 2802(a) provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." This requires an employer "to separately pay" an employee for "automobile expenses that the employee actually and necessarily incurred." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007). When an "employer either knows or has reason to know that the employee has incurred a reimbursable expense. . . it must exercise due diligence to ensure that each employee is reimbursed." *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009). Section 2802 is subject to an anti-waiver provision. *See* Cal. Labor Code § 2804.

4

Because calculation of the actual expenses can be "burdensome for both the employer and the employee," an employer is permitted to use certain less accurate calculations, subject to two requirements. First, "the employer must provide some method or formula to identify the amount of the combined employee compensation payment that is intended to provide expense reimbursement." *Gattuso*, 42 Cal. 4th at 573. Second, "the employee must be permitted to challenge the resulting reimbursement payment" if the amount paid turns out to be "less than the actual expenses . . . necessarily incurred." *Id.* at 568–69. Thus, an employer may use a "mileage reimbursement method," where an employee simply keeps track of the number of miles driven, and the employer uses some standard rate to compensate, such as the IRS mileage rate. *Id.* at 569. An employer may also use a "lump-sum payment" method, "based on the employer's understanding of the employee's job duties." *Id.* at 570. An employer may even provide "increases in base salary or commission rates" as a method of reimbursement, as long as the employer "communicate[s] to its employees the method or basis for apportion[ment]." *Id.* at 574. But while these methods of calculation are permitted, the employer will be liable for any underpayment.

The parties agree, for the purposes of this motion, that the IRS reimbursement rate is the appropriate measure of plaintiff Bahr's actual automobile expenses. The question here is whether defendants were permitted to use overpayment of reimbursement expenses in earlier paychecks to offset underpayments in later paychecks. Neither the California Courts nor the California Department of Labor Standards Enforcement ("DLSE") has answered this question directly, though they have addressed similar questions about overpayment of wages, for which offsetting is almost always prohibited.

According to a DLSE opinion letter, "[u]nder most circumstances, California law prohibits an employer from deducting from an employee's wages any debts the employee may owe to the employer," including to recoup overpayment of wages. Deductions for Overpayment of Wages, DLSE Opinion Letter (September 22, 1999), available at http://www.dir.ca.gov/dlse/opinions/1999-09-22-1.pdf ("DLSE Letter"); *see also City of Oakland v. Hassey*, 163 Cal. App. 4th 1477, 1501 (2008); *Cal. State Emps. Ass'n v. State of Cal.*, 198 Cal. App. 3d 374 (1988); Cal. Labor Code § 224. This is because, under California attachment laws, all wages of a debtor earned in exchange for personal services are exempt

5

from levy. Cal. Code Civ. Pro. § 487.020(c). As the DLSE has explained, "[t]he underlying public policy for the wage exemption statutes serve to insure that the debtor and his or her family will retain sufficient money to maintain a basic standard of living and be afforded fundamental due process." DLSE Letter; *see also Barnhill v. Saunders*, 125 Cal. App. 3d 1, 6 (1981) ("The policy underlying the state's wage exemption statutes is to insure that regardless of the debtor's improvidence, the debtor and his or her family will retain enough money to maintain a basic standard of living, so that the debtor may have a fair chance to remain a productive member of the community."). To allow an employer to offset against wages for debts an employee may owe the employer would allow the employer to do by self-help what he cannot accomplish by attachment, and thus it would defeat the public policy of the attachment exemption for wages. DLSE Letter (citing *Barnhill*, 125 Cal. App. 3d at 6). It does not matter whether the employee owes the employer money to pay back a promissory note, to pay for a training where he failed to stay on the job for the requisite amount of time, or simply because the employer made a mistake and overpaid the employee one month. *See Hassey*, 163 Cal. App. 4th at 1483 (training); *Barnhill*, 125 Cal. App. 3d at 4 (promissory note); DLSE Letter (prior overpayment of wages).

"[W]ages and expense reimbursement are conceptually distinct and subject to different statutory and sometimes also contractual constraints." *Gattuso*, 42 Cal. 4th at 572. That said, rules regarding the payment of wages are often used to develop rules regarding reimbursement by way of analogy. In one case, for example, where a court was called upon to determine what triggers an employer's requirement to make reimbursement payments, the court looked to rules regarding payment of overtime wages, explaining:

> Reimbursement for expenses is comparable to a wage. In both situations, an employee is owed compensation for services or acts performed for the employer's benefit. In both situations, the compensation is, under governing statutes, owed as a matter of right once incurred or accrued. Both obligations are subject to an anti-waiver provision—i.e., under California law, there is an anti-waiver provision for wages just as there is for reimbursement.

*Stuart*, 641 F. Supp. 2d at 904; *see also In Re Work Uniform Cases*, 133 Cal. App. 4th 328, 337–38 (2005) ("Payment to employees for work uniforms is a part of the employees' compensation and should be considered like any other payment of wages, compensation or benefits."); *Dep't of Ind. Relations v.*

6

*UI Video Stores, Inc.*, 55 Cal. App. 4th 1084, 1091–91 (1997) (discussing cases). *Cf. Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1 (2007) (discussing a DLSE opinion letter stating that if an employee is paid *at least twice the minimum wage*, he may be required, as a condition of employment, to furnish his own tools).

Here, the analogy holds true as well. The reasoning behind the prohibition on deducting overpayment of wages from wage statements applies with equal force to a prohibition on deducting overpayment of reimbursements from later reimbursements. Employers are required to indemnify employees for certain expenses because the employees should not be required to bear the burden of the costs of doing business. *See Grissom v. Vons Companies, Inc.*, 1 Cal. App. 4th 52, 59–60 (1991) (explaining that the purpose of Labor Code section 2802 is "to protect employees from suffering expenses in direct consequence of doing their jobs"). To require the employee to bear the expense one month because he was accidentally (or even purposefully) overpaid a previous month for all practical purposes is the equivalent of a wage deduction that month.

This understanding is not inconsistent with *Gattuso*. It is possible that an employer would be permitted to use the type of reimbursement system that defendants have, but only as long as the employer "communicate[s] to its employees the method or basis" for reimbursement, *see Gattuso*, 42 Cal. 4th at 574, as long as the employer fully indemnifies the employee, and as long as the employee is still being paid above the minimum hourly or monthly wage required by California law, *see Hassey*, *supra*, 163 Cal. App. 4th 1477. That is not what happened here, however, and given the undisputed facts, defendants are not entitled to summary judgment on the mileage reimbursement claim.[2]

### 2.  Other reimbursements

Plaintiff Bahr argues that he is entitled to other reimbursements, for purchase of equipment necessary to perform his job. Defendants disagree. Plaintiff Bahr supports his argument with his own

---

[2] The question does not arise on this motion whether and when *later overpayments* can be used to compensate a worker for *earlier underpayment*. The amount of overpayment in May, July and August 2008 (August 2008 being the last pay period during the claim period) would have been insufficient to compensate plaintiff Bahr for the underpayment in September 2007 through April 2008, and in June 2008.

declaration, as well as other evidence. Defendants' primary argument in support of their motion for summary judgment is that plaintiff Bahr has not produced enough specific evidence to show that there would be a genuine issue of fact at trial.[3]

"Whether a business expense incurred is 'necessary' for purposes of applying Cal. Labor Code § 2802 'is ordinarily a question of fact, but the issue may be determined as a question of law when the material facts are undisputed and no conflicting inferences are possible.'" *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1124–25 (S.D. Cal. 2006) (quoting *Jacobus v. Krambo Corp.*, 78 Cal. App. 4th 1096, 1103 (2000)). When an "employer either knows or has reason to know that the employee has incurred a reimbursable expense. . . it must exercise due diligence to ensure that each employee is reimbursed." *Stuart*, 641 F. Supp. 2d at 903.

Plaintiff Bahr presents the following evidence in the form of a declaration. When he started at Terminix in 1999, he was given coveralls, uniforms, a ladder, and a respirator. Suppl. Decl. of John Bahr in Oppo. to Mot. for Partial Summ. J. (Bahr) ("Bahr Suppl. Decl."), Hersh Decl. Ex. A, ¶ 4. He was told by his manager that he needed certain other tools, including a good flashlight and additional protective covering. *Id.* He understood that he was required to purchase these other tools himself. *Id.* His manager expressly recommended that he purchase a good flashlight, such as a Mag with a four cell battery pack. *Id.* He was given rubber gloves that pest technicians wore, but they were not ventilated, got sweaty, could tear on a nail or splintered wood, and were unsuitable for termite inspections. *Id.* Therefore, he purchased "appropriate work gloves to replace the rubber ones." *Id.* Because the respirator gave him headaches, he purchased and used dust masks instead. *Id.* He was told to purchase black or brown work boots to wear on subfloor crawls. *Id.* Before 2005, plaintiff Bahr was only provided with a pager, not a cell phone. *Id.* ¶ 5. He was told to call a Terminix 800 number from a pay phone in order to place calls to customers, but the quality of the phone calls was poor and frustrated both

---

[3] Secondarily, defendants argue that their overpayment of plaintiff Bahr's gas reimbursements would offset any underpayment of equipment reimbursement. This argument is rejected because the gas reimbursements were clearly labeled as gas reimbursements, not as reimbursements generally, and there is no evidence that Terminix intended for them to be general reimbursements or that Terminix communicated such an intent to plaintiff Bahr. *See Gattuso*, 42 Cal. 4th at 574. Additionally, as explained in the previous section, California law does not permit an employer to offset overpayments by underpaying in future months.

him and the customers. *Id.* Terminix refused to pay for plaintiff Bahr to call a customer directly on a pay phone. *Id.* In 2000, plaintiff Bahr purchased a cell phone, and he estimates that 50% of the calls he made before receiving a company cell phone were made exclusively for work. *Id.*

Defendants have presented evidence that certain tools were provided to plaintiff Bahr in 2005. O'Toole Decl. Ex. A.[4] Plaintiff Bahr states in his declaration that he could not use any of the tools. Bahr Suppl. Decl. ¶ 6. The flashlight did not emit enough light, the measuring wheel was cumbersome and inaccurate, the screwdriver/probe was flimsy and too short. *Id.* Defendant have presented evidence that plaintiff Bahr was supplied with a new rechargeable flashlight. O'Toole Decl. ¶ 12. Plaintiff Bahr explains that he won the flashlight in a sales contest. Bahr Suppl. Decl. ¶ 13. Plaintiff Bahr argues that it was offered as a work incentive *because* Terminix typically did not supply high quality rechargeable flashlights, which is a fair inference.

Plaintiff Bahr never requested reimbursements and was never told to, and he understood that Terminix would not reimburse him for the cost to replace inadequate, broken, lost, or worn out tools. *Id.* ¶ 7. Nor did he complain to his branch manager, because when he was hired he was told that Terminix never reimburses for out of pocket purchases. *Id.* at ¶ 9. He was never made aware of any policy to the contrary. *Id.*

At the end of his declaration, plaintiff Bahr lists the approximate number of items that he purchased, including approximately how often he needed to replace items such as boots, probes, and work gloves. *Id.* ¶ 16. He also paid to launder his uniform every week. *Id.*

Plaintiff has also presented a letter from a Terminix sales manager dated November 16, 1999, that states that it is "company policy" not to "supply boots, knee pads, gloves or other work supplies." Hersh Decl. Ex. E. And he has presented a declaration from a coworker that agrees that the tools supplied by Terminix were inadequate, that employees were told to purchase certain gear themselves, and that when he complained about the nonreimbursement policy he was told to track and itemize his costs in order to take tax deductions. *See* Decl. of Ryan Enstad in Oppo. to Mot. for Partial Summ. J.

---

[4] Plaintiff Bahr was also supplied with certain other tools in 2006, including a slide rule, a calculator, a baiting installation guide, and a protective zipper pouch. Hersh Decl. Ex. F.

9

(Bahr), Hersh Decl. Ex. H.[5]

Plaintiff Bahr has presented sufficient evidence that Terminix either knew or had reason to know that he had incurred reimbursable "necessary" business expenses, but that Terminix failed to indemnify him. *See Stuart*, 641 F. Supp. 2d at 903; *Takacs*, 444 F. Supp. 2d at 1124–25. Contrary to defendants' assertion, there is nothing in the case law that would suggest that plaintiff Bahr needs to present actual receipts in order to defeat defendants' motion. Because there is a genuine dispute of material facts, defendants are not entitled to summary judgment on the equipment reimbursement claim.

## CONCLUSION

For the foregoing reasons and for good cause shown, defendants' motion for partial summary judgment is DENIED. (Doc. 31.)

**IT IS SO ORDERED.**

Dated: June 21, 2011

SUSAN ILLSTON
United States District Judge

---

[5] Defendants object to the entire declaration of Ryan Enstad, arguing that it is irrelevant, hearsay, and conclusory as to his perceptions of others' experiences. The objections are overruled.